# Hunt *vs* Armstrong's Adm'r. and Heirs.

ASSUMPSIT.

5bm399
e137   430

### ERROR TO THE MASON CIRCUIT.

*Case* 94.

### *Endorsement.  Assignment.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

*June* 6.

ALEXANDER & STOCKTON held a note on Colmesniel for $1,666 66⅔ cents, executed the 8th May, 1832, payable two years after date, and wishing to cash it, Alexander proposed to sell it to John W. Hunt, in 1833. Hunt required an additional indorser to that of Alexander &, Stockton, when Alexander proposed giving him Johnson Armstrong, and Hunt agreed to accept him, and let Alexander have the money agreed on between them, fifteen hundred, or fifteen hundred and fifty dollars, upon the faith of the proposed indorsement, and Alexander took the note to Maysville, where Armstrong lived, procured his name indorsed on the note in blank under their own, and inclosed the note to Hunt.

The case stated.

When the note fell due, Hunt sent it to Louisville, where Colmesniel lived, for suit. His attorney, in bringing suit, through mistake or ignorance, filled up the assignment over the names of Alexander & Stockton, directly to John W. *Hunter*, and in his name prosecuted an unsuccessful suit against Colmesniel. Colmesniel succeeded on his pleas of payment and set-off, before the sale and assignment of the note to Hunt. The suit was prosecuted with due diligence and fidelity, and a clear defence against the note was sustained by Colmesniel,

HUNT
*vs*
ARMSTRONG'S
ADM'R & HEIRS.

under his plea of set-off. John W. Hunt then instituted this suit of assumpsit, against the administrator and heirs of Johnson Armstrong, upon his Indorsement, the assignment over his name being filled up to Hunt after suit was brought.

On the trial the foregoing facts were proven, and it was further proven that Colmesniel's defence of set-off, was full and complete, and had accrued before the sale of the note to Hunt.

The questions of law and fact being submitted to the Circuit Court, a judgment was rendered against Hunt, on the ground that there was no *consideration* received by Armstrong for his assignment, and he or his representatives were consequently not liable, the case not being subject to the law merchant. Hunt has appealed to this Court.

The rules and analogies of the law merchant in relation to the assignment of notes, authorized by our statutes, is observed in Kentucky, and the the holder of a note assigned in blank, may rightfully fill up an assignment to himself at any time before the trial of a suit thereon.

It has been more than once said by this Court, that the rules and analogies of the mercantile law, in relation to the mode and effect of indorsements, have been adopted and applied to assignments, authorized by our statute, there being no mode prescribed by its provisions, *Reese* vs *Walton*, (4 *B. Monroe*, 510;) *Odenheimer, &c.* vs *Douglass et al*, (5 *B. Monroe*, 109.) The indorsement of the name in blank, has been deemed an authority to the holder, to write an assignment over the name indorsed, and such an indorsement of the name has been so far regarded as tantamount to an assignment in fact, as to authorize the assignment to be written out over the name, at the bar at any time during the progress of the suit.

There was, therefore, no error in writing out the assignment in this case, over the signature of Armstrong.

The liability on an indorsement of an accommodation note, or of mercantile paper, is that of a surety, and a responsibility to the holder for the entire amount, and is not limited to the amount received for the assignment.

Upon the merits, the Circuit Court has mistaken the law applicable to this case. This is not the case of an ordinary *sale and assignment* of a note. In such a case, the only consideration which moves to the assignment, is the consideration paid by the assignee and received by the assignor, and as the consideration which moves to the assignment, is the amount which alone can be recovered upon the failure to coerce payment from the obligor, if nothing was paid or received, nothing can be recovered back in a suit on the assignment.

But this is the case of an accommodation endorser, where the consideration of the endorsement of Armstrong was not the money paid and received by himself, but the money paid by Hunt, and received by Alexander and Stockton, at whose instance and for whose use and benefit he made the indorsement. The consideration was Hunt's loss, in parting with his money, and Alexander's and Stockton's gain, for whom Armstrong undertook as surety. The mere fact that Armstrong received nothing, cannot surely have the effect to render his indorsement, upon the faith of which Hunt was made to part with his money, wholly nugatory. Armstrong, by his indorsement, undertook as surety for Alexander & Stockton to Hunt, and occupies the precise condition of other sureties who undertake directly for their principal, with this difference, that he undertakes to refund Hunt's money, upon the condition that he, by the exercise of due diligence by suit, fails to collect the note from Colmesniel, the obligor, and upon those terms only. This ground of responsibility of a mere accommodation indorser, has heretofore been sanctioned by this Court, in the case of *Clay* vs *Johnson*, (6 *Monroe*, 644;) *and Smith* vs *Bacon*, (3 *J. J. Marshall*, 313.) The contingency has happened, on which Armstrong's responsibility has arisen, and it is commensurate with the amount paid by Hunt, and interest thereon. Nor can it make any difference that Hunt paid the money to Alexander before Armstrong's indorsement was obtained. The money was paid upon the understanding that Armstrong's indorsement was to be obtained, and had it not been obtained, Hunt would have had the right to demand an immediate restoration of the money. The *contract* was not *consummated* or *complete*, until Armstrong's name was obtained, nor was the note delivered to Hunt until it was obtained. Nor can it be doubted that Armstrong was apprised of, and understood the purpose for which his indorsement was required. If it was not made as conditional security for Alexander & Stockton, it was a vain and nugatory act, without object or purpose, consideration or motive, as no other motive or inducement to the act is pretended.

HUNT
vs
ARMSTRONG'S
ADM'R & HEIRS.
But it is insisted that the blunder of the attorney of Hunt, to whom the note was sent for collection against Colmesniel, in filling up the assignment over the names of Alexander & Stockton, directly to John W. *Hunter,* and the prosecution and failure of the suit in *Hunter's* name, *releases* Armstrong and his representatives from responsibility

If the condition upon which Armstrong undertook, by his indorsement, has not been complied with substantially, or if he as mere conditional surety, has been deprived of any lien or remedy for his indemnity, by the act of Hunt, or the mistake or blunder of his lawyer, there can be no doubt that he is released, and he and his representatives may claim an exemption from responsibility in this, which is an equitable form of action.

The suit was as rigorously prosecuted, and Colmesniel's exemption from all responsibility, as clearly manifested by the suit in the name of *Hunter,* as if the suit had been prosecuted in the name of Hunt. And the responsibility of an endorser is *not* made to depend on the prosecution and failure of a suit against an obligor, in any particular *name,* but on the fact that a suit was prosecuted with diligence and fidelity, and failed. Hence it is, that any endorser, in a suit against his previous endorser, may rely upon the due prosecution and failure of suit by a remote endorser of the former.

Nor can we perceive that Armstrong or his representatives are deprived of any remedy for their indemnity by the act of Hunt's lawyer, to which they would have been entitled had the assignment been regularly filled up. As the sureties of Alexander & Stockton, he endorsed the note, and upon their payment to Hunt, they as representatives of him as surety, have a right of action for the full amount paid, against the principals. And their right of action does not accrue until the payment is made. Had the endorsement been filled up over their signatures, directly to Armstrong, their right of action and recovery, would have been no greater nor more secure.

Nor can we sanction the position contended for by their
*The assignee cannot maintain suit against as-* counsel, that as the note had been discharged by Colmesniel, that Hunt's cause of action accrued immediately,

and consequently that the statute then commenced running, and his right of action is barred. If Colmesniel had directly paid off the note before the assignment to Hunt, we are not prepared to concede that Hunt could have maintained his suit against Armstrong as an endorser, without prosecuting a suit against Colmesniel, and manifesting the fact of payment by the judgment of the Court. But if this were so, as the matter relied on by Colmesniel could be available only as a set-off, and which he might or might not plead against the note, there could be no pretext for a suit by Hunt against Armstrong, until the matter was tested by a suit against Colmesniel, whether he would plead the set-off, and whether the set-off relied on could be made available to defeat Hunt's action. Hunt's right of action against Armstrong, did not therefore accrue until he was defeated in his suit against Colmesniel, and consequently the limitation did not commence running against him until that time.

The judgment of the Circuit Court is therefore reversed, and cause remanded, that a new trial may be granted.

*Robinson & Johnson* for plaintiff : *Hord* for defendants.

signor, on the ground that the obligor at the date of the assignment held demands against assignee which he might plead as set-off against the demand.